CULPEPPER, Judge.
This damage suit arises from a collision between plaintiff appellants’ left turning automobile and an overtaking automobile insured by defendant appellee. After trial on the merits the district judge found that the accident was caused solely by the negligence of the driver of plaintiff’s vehicle and that defendant’s insured was guilty of no negligence whatsoever. Plaintiffs appealed.
The substantial issue on appeal is whether defendant’s insured was negligent in overtaking and passing plaintiff’s vehicle, as it made a left turn off the highway onto an unmarked gravel road.
• The scene of the accident is the T-intersection of heavily traveled U. S. Highway 71, running north and south, with an unmarked public gravel road which proceeds from said highway in an easterly direction. The highway contains two lanes of 12 feet each, separated by a white line down the center, and is straight and level for some distance north and south of the intersection. A store is located on the west side of the highway approximately opposite the gravel road. A railroad track runs parallel to and approximately 30 yards from the east side of the highway. There is no yellow “no passing” line or other sign or marker on the highway indicating the intersection of the gravel road. However, the usual railroad crossing sign is located on the gravel road at the railroad crossing.
The accident occurred at about 4:30 p. m. on December 8, 1955. The weather was clear and dry and visibility good.
The plaintiffs, Mr. and Mrs. Pierre Stephen, were passengers in their automobile, being driven by their 19 year old son, Ellis Ray Stephen, in a southerly direction on said highway. They live in the community and intended to turn left on the gravel road to go to the home of Mr. Stephen’s brother. Defendant’s insured, Mr. Trefger, a resident of the State of Iowa, who had never driven this highway before, was following the Stephen vehicle in a southerly direction, intending eventually to go to Biloxi, Mississippi, on a vacation.
The testimony of Trefger and that of young Stephen and his parents, as to the way in which the accident occurred, is sharply contradictory. We see no need to detail these discrepancies. Actually, Mrs. Stephen, who was a passenger on the rear seat, did not see or hear anything which is of material assistance in deciding the factual issues involved. The testimony of young Stephen and his father is contradictory and very difficult to reconcile with the physical facts. It is apparent that the trial judge, in an opinion which he dictated into the record immediately following the trial, accepted Trefger’s version of the accident. We think the record amply supports this finding of fact.
Mr. Trefger testified that he was driving at a speed of 50 to 55 miles per hour as he approached the rear of the Stephen vehicle. *258 which was traveling 25 to 30 miles per hour. He described the accident as follows:
“Just before the accident, there was this car was ahead of me, and there was another car coming toward me and I slowed down to same speed just about what they did. I drove behind them oh, probably one hundred yards, at the same speed that they were driving and then was going fast and I wanted to go on and so I honked my horn and didn’t get no signal and I thought they would either go straight out or go some place else. There looked like there was a store from me down the line and I thought maybe, they kept looking that way and I seen it and I just thought, ‘Well, I can do it,’ and that I would go around them. I blowed my horn twice when I started around them and didn’t get no signal and then I stepped on the gas and just as my front bumper got even with the hind bumper, he made a left hand turn in front of me without giving me a signal. I tried to miss him, I swung my car real short and when I hit that gravel, my car slipped and the front wheel went down in the ditch and I turned upside down.”
“Q. Did you ever hit the other car ?
“A. I sideswiped him. I pushed him from the side.”
Mr. Trefger testified positively that he did not and could not see the intersecting gravel road until after he had started his passing maneuver. He saw the gravel road at about the same time the Stephen’s vehicle turned left. The pictures filed in evidence and the testimony of Trooper Manuel and Ellis Ray Stephen himself corroborate Trefger’s statement that he could not see the intersecting gravel road before he started his passing maneuver.
Under the above facts we believe this case falls within the jurisprudence holding that the sole cause of the accident was the negligence of the driver turning left suddenly, and without giving a signal, in the immediate path of and without yielding the right of way to an overtaking vehicle, Washington Fire & Marine Ins. Co. v. Firemen’s Ins. Co., 232 La. 379, 94 So.2d 295; Castille v. Houston Fire & Cas. Ins. Co., La.App. 1 Cir., 92 So.2d 137; Aetna Cas. & Surety Co. v. Crow, La.App. 1 Cir., 86 So.2d 212; Messina v. Audubon Ins. Co., La.App. 1 Cir., 67 So.2d 143; Graves v. Riser, La.App. 2 Cir., 62 So.2d 163; Day v. Roberts, La.App. 2 Cir., 55 So.2d 316; Sonnier v. Great American Ins. Co., 134 So.2d 363; LSA-R.S. 32:234, 236 and 237(E).
Plaintiffs argue forcefully that under cross-examination Trefger gave the following testimony which, plaintiffs contend, convicts him of negligence:
“Q. Now when you started to pass the Stephens automobile, did you have any idea that they might not be going straight?
“A. Well, it was a hard thing to tell. They kept a looking over to the store, but they went past the store. They kept a looking over there. I couldn’t tell which way, I didn’t know if they were going straight or going to turn into the store.
“Q. And maybe they could turn into this little, what you thought was a lane?
“A. Yes.
“Q. You thought about that as you started to pass them, didn’t you ?
“A. Right, that is the reason I honked my horn, if they should do anything like that.”
Plaintiffs contend the above testimony by Trefger shows he knew the driver of the Stephen automobile was going to do something unusual and this should have placed Trefger on guard; that he should have reduced his speed and brought his car under such control that he could have avoided a collision regardless of the action the Stephen vehicle took. Plaintiffs cite LeBrun v. American Paper Mfg. Co., La.App., 41 So. *259 2d 94 and Myers v. Traders & General Ins. Co., La.App., 81 So.2d 130 contending that these cases stand for the proposition that the driver of an overtaking vehicle who sees that the operator of the forward automobile is going to do something out of the ordinary, should wait until he is certain of the course which the forward vehicle is going to take.
We cannot agree that the cited cases have any application here. It is true that the Stephen vehicle was going only 25 to 30 miles per hour but there is nothing so unusual about this as to warn Trefger that Stephen was going to turn left. As stated above, Trefger could not see the intersecting gravel road. In the absence of any left turn signal or other action by Stephen, Trefger was not required to anticipate that Stephen might turn left. Under the circumstances we think that Trefger was reasonable in assuming that Stephen would take no action which would render Trefger’s passing hazardous. It was not until after Trefger had started his passing maneuver that he saw the small gravel road to the left, but by that time Stephen had already started his left turning maneuver and it was too late for Trefger to avoid the collision.
Having decided that Mr. Trefger was free of negligence, it is unnecessary for us to discuss the other issues argued in counsels’ briefs.
For the reasons assigned the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs appellants.
Affirmed.