207 So.2d 574 (1968)
Felton ARDOIN, Plaintiff and Appellee,
v.
Lowrey J. CHACHERE et al., Defendants and Appellants.
No. 2236.
Court of Appeal of Louisiana, Third Circuit.
February 28, 1968.
*575 Davidson, Meaux, Onebane & Donohoe, by James E. Diaz, Lafayette, for defendant-appellant.
Joseph E. Coreil, Ville Platte, for plaintiff-appellee.
Before CULPEPPER, HOOD and FRUGEé, JJ.
CULPEPPER Judge.
This is a suit for damages for personal injuries received in an automobile accident. From a judgment awarding plaintiff $2,500 in general damages, plus medical expenses, etc., the defendants have appealed.
The accident occurred in a rural area on Louisiana Highway #13, a two-way, two-lane blacktop highway which extends north *576 and south and is straight and level in both directions at the scene. It was a clear day. The speed limit was 60 MPH. Plaintiff was proceeding north at about 25 MPH. Defendant's large gravel truck, which was empty at the time, was following plaintiff at about 35 to 40 MPH. Defendant's driver approached plaintiff from the rear, moved into the passing lane and was executing a passing maneuver when plaintiff turned left off of Highway #13 onto a small graveled road. Defendant's driver was unable to stop and the vehicles collided at the entrance to the small gravel road.
It is plaintiff's primary contention that defendant's driver was in violation of LSA-R.S. 32:76, subd. A(2) which provides in pertinent part that no vehicle shall be driven to the left side of the highway "when approaching within one hundred feet or traversing any intersection."
Defendant contends the side road in question here did not constitute an intersection within the intendment of the statute.
In Davis v. Southern Farm Bureau Casualty Insurance Company, 134 So.2d 366 (La.App. 3rd Cir.1961), we considered a similar question and held:
"The side-road in question was a narrow gravelled lane used principally to reach a residence located about three hundred yards from the highway and also by some farmers to reach their fields located along its short length. It is claimed that it is a public road rather than a private driveway because parish equipment had on occasions gravelled and maintained it over the six to seven years prior to the accident.
"(2) We find no error in the trial court's determination, based upon the evidence introduced at the trial, that the unmarked side-road in question, even though used by the public, is not an `intersection of the highway' within the meaning of LSA-R.S. 32:233E."
See also Dukes v. Kirkwood, La. App., 105 So.2d 318 and Crane v. London, La.App., 152 So.2d 631 and the cases cited therein where narrow, unmarked side roads were held not to constitute intersections within the meaning of the statute in question.
The facts of the present case show that this side road leading to the west did not cross Highway #13 but instead formed what is commonly called a "T-intersection"; the road was graveled and had a width of 15 to 20 feet for a distance of about 400 feet from Highway #13, at which point it narrowed still further and became little more than a dirt lane; there were no signs whatever to mark the intersection or the side road; there was no yellow no-passing line on Highway #13; and there was no stop sign at the highway. Under the jurisprudence cited above, we think it is clear that this small unmarked graveled road did not create an intersection within the intendment of LSA-R.S. 32:76, subd. A(2). Having reached this conclusion, it is clear that defendant was not negligent in "passing at an intersection."
Let us now examine defendant's duty as a left turner off the highway, at a place other than an intersection. LSA-R.S. 32:104 provides:
"A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
"B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred *577 (100) feet traveled by the vehicle before turning."
The evidence is in conflict as to whether plaintiff gave a left turn signal. Plaintiff testified his left turn signal lights were functioning properly and that he turned them on when about 200 yards from the gravel road. He admittedly gave no left turn hand signal. On the other hand, defendant's truck driver said plaintiff gave no left turn signal whatever. There was also testimony by defendant's truck foreman that an examination of plaintiff's vehicle immediately after the accident showed the left turn signal light was not even wired, even before the accident. Under these circumstances, there was sufficient testimony which, if believed by the trial judge, could establish that plaintiff gave a left turn signal. We therefore find the signal was given.
It may be that defendant's driver was negligent in attempting to pass a vehicle which was signaling an intention to make a left turn. Records v. Fidelity & Casualty Company of New York (La.App. 3rd Cir.1961), 131 So.2d 618; Prewitt et ux. v. St. Paul Fire & Marine Insurance Corporation (La.App. 2nd Cir.1960), 126 So.2d 389; Stafford v. United Service Automobile Association (La.App. 1st Cir.1960), 120 So.2d 507; Smith v. Massachusetts Bonding & Insurance Co. (La.App. 2nd Cir.1961), 130 So.2d 153; Paggett v. Travelers Indemnity Co. (La.App. 2nd Cir.1957), 99 So.2d 173. However, even assuming that defendant's driver was negligent in attempting to pass, the plaintiff was also clearly guilty of contributory negligence in attempting to make a left turn when he saw or should have seen that it was unsafe to do so. In the recent case of McCann v. Mercer, 191 So.2d 150 (La.App. 3rd Cir.1966), the facts were very similar to the present case and we held:
"Although he knew of the vehicle approaching from the rear, he did not look to the rear immediately before attempting to turn left. If the defendant had looked immediately before attempting the left turn, he would have known that the Mc-Cann automobile was in the process of rapidly overtaking him, and that a left-hand turn at the moment would cause an accident. His failure to look immediately before turning was negligence which had a causal connection with the accident.
"`A left-turning driver must ascertain in advance that the turn can be made without endangering normal overtaking traffic; and in this respect, he must not only make adequate signal of his left-turn intention but also adequate observation to his rear to ascertain that the turn can be executed safely.' Garris v. Jabbia (La. App., 3 Cir.1965), 179 So.2d 486, and cases therein cited. See also Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, 1963."
The facts of the present case show, even according to plaintiff's own testimony, that as he approached the gravel road he observed defendant's truck approaching from the rear and knew of its presence. He says that when he was between 200 and 250 yards from the gravel road he looked in his rear view mirror and saw defendant's truck. Although his testimony is somewhat vague as to whether he continued to observe defendant's truck in the rear view mirror on down to the time of the impact, we think his testimony as a whole shows that after observing defendant's truck 200 yards to the rear, he did not again see it until plaintiff was about 50 yards from the gravel road and had started his left turning manuever. At that point, plaintiff testified he saw defendant's truck to the rear in the passing lane and that since he, plaintiff, was already in the midst of his left turn he could not straighten out and avoid the accident.
Under the above quoted authorities, plaintiff was clearly negligent. For, as stated above, a left turner must not only give adequate signal of his intention but also make adequate observation to his rear to ascertain that the turn can be safely made.
*578 For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendants rejecting plaintiff's demands. All costs in the lower court, as well as the costs of this appeal are assessed against the plaintiff appellee.
Reversed and rendered.