215 So.2d 138 (1968)
Horace Joseph LEWIS and Viola Lewis, Plaintiffs-Appellants,
v.
LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants-Appellees.
No. 2453.
Court of Appeal of Louisiana, Third Circuit.
October 31, 1968.
*139 Richard B. Millspaugh, Opelousas, for plaintiffs-appellants.
Davidson, Meaux, Onebane & Donohoe, by Richard C. Meaux, Lafayette, for defendants-appellees.
Before TATE, FRUGE and SAVOY, JJ.
FRUGE, Judge.
This case involves an accident which resulted when the plaintiff attempted a lefthand maneuver into a private drive at the same moment the defendant was endeavoring to pass her.
The plaintiffs, Horace Joseph Lewis and Viola Lewis, instituted suit against defendants, Martin W. Venable, the driver of the pick-up truck, Pope Motor Parts and Supply Company, Inc., his employer, and Liberty Mutual Insurance Company, the insurer of the vehicle, for personal injuries sustained by Viola Lewis and the special damages incurred by Mr. Lewis, as a result of the accident which occurred on or about November 14, 1964, on Louisiana Highway 357, approximately one and one-half miles south of Lewisburg, St. Landry Parish, Louisiana.
General denial with pleas of contributory negligence were filed by the defendant. The trial court held that although the driver of the pick-up truck, Mr. Venable, was negligent in failing to maintain a proper lookout and to have his vehicle under proper control, Mrs. Lewis was contributorily negligent in attempting to make a left turn in the face of the overtaking traffic. From this judgment the plaintiffs prosecute this appeal.
The evidence reveals that on the date in question, at approximately 12:30 p. m., Mrs. Viola Lewis was driving an automobile owned by her son-in-law in a southerly direction on Louisiana Highway 357. At the time of the accident, the weather was clear, the road was straight and level at the point where the accident occurred, and was of black-top construction, approximately twenty-four feet in width. As she approached the driveway to her residence, located on the east side of the highway, she attempted to make a left turn and was hit by the vehicle belonging to Pope Motor Parts and Supply Company, Inc., and being driven then by its employee, Mr. Martin Venable, also in a southerly direction. It is the testimony of Mrs. Lewis that, prior to *140 making her left turn, she gave a hand signal and also directional light signal, indicating a left turn, and that at that time she was some distance away from the drivewaysome 287 feet away. She was going approximately 40 to 45 miles per hour. It was shown by the testimony that she looked back at least twiceonce when she commenced to give her signal at 287 feet, and again at 115 feet from her drivewayand that she saw the oncoming truck which subsequently collided with her. At impact her two front wheels were almost off the black-top and her vehicle was shoved sideways about five feet.
In their appeal, appellants question the decision of the lower court in that it did not find that Viola Lewis, as a matter of fact, could not foresee that the vehicle of defendant, Martin W. Venable, would get out of control and therefore could not guard by action on her part against the occurrence which resulted in the accident which gave rise to this cause of action. By this and the other allegations of error this court believes that plaintiff means she had no way of perceiving that defendant would pass her, and that she did all that could be reasonably expected of her to avoid the accident.
The testimony produced in the trial conflicted somewhat, especially as to whether or not the defendant was actually in the process of passing. The testimony of a police officer revealed that the skid marks, some two hundred and ten feet long, began in the right lane. As well, defendant was unable to recall positively whether or not he had begun his turn when he was forced to apply his brakes.
Plaintiff's counsel argued that the defendant was not passing, and therefore this would not constitute a left-hand-turn-passing case, but rather would simply go off on the negligence of the defendant in not maintaining a proper lookout. In reaching a verdict for the defendant-appellees, the lower court must necessarily have accepted the defendants' version of the accident, and in affirming his decision this court shall adopt his findings. The factual determination of the trial court particularly when based upon an evaluation of the credibility of the opposing witnesses should not be disturbed on appeal unless manifestly erroneous. Huntsberry v. Millers Mutual Fire Insurance Co., 205 So.2d 617 (La.App. 3d Cir., 1967); Johnson v. Wilson, 97 So.2d 674 (La.App. 1st Cir., 1957) and citations therein.
LSA-R.S. 32:104 (A) provides that:
"No person shall turn a vehicle * * * to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety".
It is very well established that a motorist who attempts to make a left turn on a public highway must ascertain before making the turn that it can be negotiated in safety and when an accident occurs as a left turn is being made, the burden rests heavily upon the driver who is making the left turn to explain how the accident occurred, and to show that he was free from negligence. Huntsberry v. Millers Mutual Fire Insurance Company, 205 So.2d 617, 620 (La.App. 3d Cir., 1967), and citations therein.
In general, it could be said that there are two major obligations or duties of a person making a left turn on a Louisiana highway. The first is that of giving a proper signal. See LSA-R.S. 32:104 (B). The plaintiff, and other witnesses in the car with her, testified that she definitely gave a signal. Although the defendant driver testified he had not seen it prior to the accident, he did notice that the signal light was on and was working immediately after the accident. We therefore find that the signal was given.
The second duty is that the person maintain a proper lookout, and in doing so, not make a turn endangering a motorist oncoming or following her. See LSA-R.S. *141 32:104 (B). This court has had many opportunities to rule in cases involving the presence or absence of such a proper lookout, and in so doing to define it. In the case of McCann v. Mercer, 191 So.2d 150 (La.App. 3d Cir., 1966), this court stated at page 153 as follows:
"Although he knew of the vehicle approaching from the rear, he did not look to the rear immediately before attempting to turn left. If the defendant had looked immediately before attempting the left turn, he would have known that the McCann automobile was in the process of rapidly overtaking him, and that a left-hand turn at the moment would cause an accident. His failure to look immediately before turning was negligence which had a causal connection with the accident. `A left-turning driver must ascertain in advance that the turn can be made without endangering normal overtaking traffic; and in this respect, he must not only make adequate signal of his left-turn intention but also adequate observation to his rear to ascertain that the turn can be executed safely.' Garris v. Jabbia, (La.App. 3d Cir., 1965), 179 So.2d 486, and cases therein cited. * * *"
In the case of Merritt v. Southern Farm Bureau Casualty Insurance Co., 199 So.2d 594 (La.App. 3d Cir., 1967), this court, at page 599 stated as follows:
"When a motorist who intends to make a left turn becomes aware of the presence of a following or overtaking motorist, even though the latter is a substantial distance behind him, he is required to maintain a lookout for that motorist and all other traffic on the highway, and to look to his rear again, immediately before the left turn is attempted, to ascertain whether it can be negotiated safely. (Citations omitted)

* * * * * *
"Our conclusion is that Mrs. Merritt was negligent in failing to maintain a proper lookout, in failing to look to her rear immediately before making a left turn to determine whether such a maneuver could be made safely and in turning to her left on a public highway directly in the path of a passing motorist. In our opinion her negligence in these respects was the sole proximate cause of the accident."
This doctrine was reiterated in the very recent case of Ardoin v. Chachere, 207 So.2d 574 (La.App. 3d Cir., 1968).
Therefore, by these decisions it can be seen that the duty of the driver of an overtaken vehicle if the driver had noticed, or should have noticed that his vehicle is being overtaken is to maintain not only a proper signal of the intention to turn, but also to maintain observance of the overtaking vehicle up to the time in which the turn is made and at the time that the turn is made, the judgment of the driver that such turn can be made in safety must be that of a reasonable person in like circumstances.
Mrs. Lewis was aware of the presence of the Venable truck. Although there is some confusion as to how many times she looked back, the trial judge found that she had done so on at least two occasions. On both of these occasions Mrs. Lewis testified that the truck was "way back", and measurements introduced by the plaintiff indicated that the distances were about 256 feet behind her the first time and about 200 feet behind her on the second. There was no concrete testimony on her part that she had definitely maintained an observance of the defendant's truck up until the actual turning maneuver, and according to the reasons for judgment of the trial court, he did not believe that she had. Had Mrs. Lewis maintained observance of the defendant she would have seen him attempting to pass her and would not have attempted the turn, thus possibly avoiding the accident. Therefore, Mrs. Lewis' negligence in not so maintaining a proper lookout and in not seeing that the defendant was in the process of passing her vehicle when she began her turn constituted contributory negligence on her part. This negligence being a cause in fact, and a *142 proximate cause of the accident, the lower court's barring her recovery was proper.
For the foregoing reasons, it is the opinion of this court that the lower court's judgment was correct, and that there was no manifest error. Therefore, the decision of the lower court is affirmed, costs to be paid by plaintiff-appellants.
Affirmed.