328 So.2d 731 (1976)
Sidney J. SULLIVAN, Jr., et al., Plaintiffs-Appellants,
v.
Ruby P. WELCH et al., Defendants-Appellees.
No. 5369.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1976.
Rehearing Denied April 7, 1976.
McCollister, Belcher, McCleary & Fazio by Neil H. Mixon, Jr., Baton Rouge, for plaintiffs-appellants.
Brame, Bergstedt & Brame by David Fraser, Lake Charles, John Navarre, Oakdale, for defendants-appellees.
Before HOOD, GUIDRY and PETERS, JJ.
GUIDRY, Judge.
This suit for damages arises out of a collision between a left turning automobile driven by defendant, Ruby Welch and insured by Zurich Insurance Company, and an overtaking and passing automobile driven by plaintiff, Catherine Sullivan. The district court held that the accident was caused by the negligence of the plaintiff, and that the defendant was free from negligence. Plaintiff appealed.
The accident giving rise to this litigation occurred on July 10, 1971, on U.S. Highway 165, just south of Oakdale, Louisiana. The plaintiff was proceeding north on Highway 165, while a good distance ahead of her the defendant drove onto Highway 165 from her private driveway and turned north. Directly behind Mrs. Welch was John Navarre who followed the defendant onto the same highway from the same driveway and turned north behind her. The defendant stated she did not see the plaintiff's automobile as she entered the highway, but John Navarre said that he could just catch sight of the plaintiff's car *732 coming over the hill as he turned onto the highway.
Almost simultaneous with her entry onto Highway 165 Mrs. Welch, according to her testimony, decided she had to return home. With this in mind Mrs. Welch decided to turn around at a private driveway located some 450 feet distant from the driveway from whence she had come. Mrs. Welch engaged her directional signal indicating that she would execute a left turn and then checked to the front for oncoming traffic and to the rear for approaching traffic by use of her rear and side mirrors. Mrs. Welch saw no oncoming traffic and observed only the vehicle immediately behind her which was occupied by John Navarre. Mrs. Welch then commenced her turn into the aforesaid driveway, traveling at a speed of about 10 to 15 miles per hour.
John Navarre who was following close behind, about one car length, noticed that Mrs. Welch's left turn signal was activated approximately 250 feet before she commenced her turn. At that point, according to his testimony Mrs. Sullivan's car was rapidly approaching from the rear but was entirely within the north bound lane. Then Mrs. Welch began her angulated turn and just as the Welch vehicle was about to enter the driveway the Sullivan car pulled up even with him, and it was only a brief time before the crash Mr. Navarre testified that the Welch vehicle began the left turn maneuver and pre-empted the south bound lane before Mrs. Sullivan began her passing maneuver. In this regard Mr. Navarre testified as follows (Tr. page 158):
"Q. All right. Now, Judge Navarre, are you able to tell the Court which vehicle crossed the centerline of 165 first, that is did Mrs. Welch cross the center line in her turning maneuver or did Mrs. Sullivan cross the center line in her passing maneuver?
A. Mrs. Welch was beginning to turn and had gotten into the passing lane first."
Mr. Navarre testified further that the Welch vehicle was in the south bound lane very near the west edge of the paved portion of the highway when the collision occurred. The right front of the Sullivan vehicle collided with the left front door of the Welch 2-door automobile.
Mrs. Sullivan testified that as she approached from the south and reached the crest of the rise she saw the two slow moving vehicles in front of her. She noticed the brake lights of the vehicle directly ahead come on. Mrs. Sullivan testified she was traveling at about 65 miles per hour prior to her approach of these two vehicles, and as she came up behind the Navarre car she reduced her speed to about 35 or 40 miles per hour. According to her version of what happened she then proceeded to pass the cars in front of her, noting that there was no oncoming traffic. As she began her passing maneuver Mrs. Sullivan pushed the accelerator all the way to the floor to engage the passing gear. At this time, according to Mrs. Sullivan's testimony, Mrs. Welch was still in the north bound lane of travel. Mrs. Sullivan indicated that as she moved abreast of the Navarre car she noticed for the first time that the left directional signal on the defendant's vehicle was engaged, she then applied her brakes. Thereafter, within a split second the collision occurred. Mrs. Sullivan's testimony was corroborated by Mr. Kline, a passenger in the Sullivan car.
Trooper Brady of the Louisiana State Police testified that he was called to the scene following the accident. The automobiles had been moved when Trooper Brady arrived on the scene. His investigation disclosed the presence of four skid marks approximately 114 feet in length all located within the south bound lane. The officer testified further that Mrs. Sullivan admitted that she was traveling approximately 65 miles per hour when the accident happened.
The trial judge after evaluating all of the evidence determined, as aforesaid, the *733 accident in question was caused solely by the negligence of the plaintiff, Mrs. Sullivan. After consideration of the record and for the reasons hereinafter fully set out we conclude that the trial court erred in finding the defendant without negligence. We determine that the defendant was negligent and that her negligence was a proximate cause of the accident. We also find that plaintiff was contributorily negligent and accordingly affirm the decision of the trial court.
As hereinabove set out the testimony of the parties and witnesses reflects two versions of the accident which are diametrically opposed. The trial judge accepted the defendant's version of the accident as corroborated by Mr. Navarre. We conclude that the trial court committed manifest error in so doing in that the uncontroverted and established physical facts indicate rather conclusively that the plaintiff's car had to be in the passing lane for a period of time, however, short, before the defendant, Mrs. Welch, began her left turning maneuver and therefore should have been seen by her.
The uncontradicted physical facts are: (1) The plaintiff's automobile left 114 feet of skid marks in the passing lane; (2) The point of impact was located at the west edge of the south bound lane; (3) although there is no evidence regarding the exact width of the highway the record reveals that it was a normal two lane road, about 20 in width (TR. Pg. 177); and (4) the right front of plaintiff's automobile hit the left door of the defendant's 2-door vehicle.
With the above physical facts in mind, and considering the fact that defendant crossed the highway at a slight angle, we conclude that defendant traveled a distance of not more than 12' at an admitted speed of 10-15 miles per hour. At 10 miles per hour a motorist will travel 14.7 feet per second and at 15 miles per hour one will travel 22 feet per second. Defendant traveled less than 12 feet after commencing her left-turning maneuver in that all agree that the impact occurred at the west edge of the south bound lane. From these facts we can ascertain that at very most it took one second for Mrs. Welch to execute the turn from her position in the north bound lane to the point of impact, a distance of about 12 feet. Assuming that Mrs. Sullivan's top speed during her passing maneuver was 65 miles per hour she would traverse a distance of 95.5 feet per second, and certainly less than this while her automobile was braking. At full braking the plaintiff left 114 feet of skid marks all in the south bound lane. It is clear then, that from the time Mrs. Sullivan applied her brakes to the point of impact took well over one second.
We conclude from the above that approximately one second prior to the accident Mrs. Welch, at best, had just begun her turning maneuver, while Mrs. Sullivan had, at this time, already begun to brake. The plaintiff was obviously in the passing lane and braking as the defendant started her left turn.
The duties imposed on a left-turning motorist are well established in the jurisprudence of this state. In the recent case of Bamburg v. Nelson, 313 So.2d 872 (La.App.2nd Cir. 1975), the court stated:
"Although the driver making a left turn who is involved in an accident is not deemed ipso facto negligent, the cases which characterize the maneuver as dangerous and setting forth the duty of the left-turning vehicle are numerous. The duty of the left-turning motorist is twofold, the first being to give a proper signal, and secondly to make proper observation that the turn can be made without endangering an oncoming or overtaking vehicle. See Lewis v. Liberty Mutual Insurance Company, 215 So.2d 138 (La.App.3rd Cir. 1968). A left turner must not only give an adequate signal of his intention but also make adequate observation to his rear to ascertain that the turn can be safely made. Ardoin v. Chachere, 207 So.2d 574 (La.App.3rd Cir. 1968)."
*734 Although Mrs. Welch may have complied with the first duty imposed upon her by law in giving a signal she did not in our opinion, fulfill the second duty, that of making proper observation and keeping proper lookout. Mrs. Welch testified she looked in her rear view and side mirrors but, did not see the Sullivan vehicle and did not know of its presence until the collision occurred. The physical facts clearly indicate that the Sullivan vehicle had preempted the passing lane. Mrs. Welch, had she been keeping a proper lookout should have observed the Sullivan vehicle, for it was there to be seen and in not doing so she breached her duty to observe for overtaking traffic.
"The duty of observation is the same for both the motorist who discovers the overtaking vehicle and the one who does not." (Bamburg v. Nelson, supra, pg. 875.)
We find therefore the defendant, Ruby P. Welch guilty of negligence which is a proximate cause of this accident.
A more difficult question concerns whether the plaintiff, overtaking motorist, was guilty of any negligence which contributed to the accident.
The record reflects that prior to Mrs. Sullivan's approach of the two vehicles driven by Mr. Navarre and defendant that she was traveling at a speed estimated by her at 65 miles per hour on a highway with a posted limit of 45 miles per hour. Mrs. Sullivan was aware that the vehicles ahead of her were traveling at a slow rate of speed, and admitted to seeing the brake lights of the car directly in front of her come on. Upon her approach of the two vehicles, and prior to her overtaking them Mrs. Sullivan testified she reduced her speed to about 35-40 miles per hour. At this time the plaintiff did not see, according to her, the left turn signal engaged on the defendant's vehicle. Mrs. Sullivan stated she first noticed the left turn signal, after she had begun her passing maneuver and was abreast of the Navarre car. We conclude that Mrs. Welch, as she and Mr. Navarre testified, had engaged her turn signal prior to Mrs. Sullivan's passing maneuver, and that Mrs. Sullivan saw this signal immediately upon her entry into the passing lane. We reach this conclusion because Mrs. Sullivan said that upon commencing her passing maneuver she pressed the accelerator all the way to the floor to engage the passing gear, hoping that she could beat Mrs. Welch to the driveway. When Mrs. Sullivan engaged the passing gear, although Mrs. Welch was entirely within the north bound lane, she knew Mrs. Welch intended to turn. Certainly there was no reason for Mrs. Sullivan to press her accelerator all the way to the floor if this were not the case since she was already traveling at a speed that would easily allow her to overtake the two vehicles. Mrs. Sullivan in beginning her passing maneuver was obviously cognizant of Mrs. Welch's turning signal, but engaged her passing gear in a rash attempt to overtake Mrs. Welch. The accident could have been averted had it not been for Mrs. Sullivan's attempt to beat Mrs. Welch to the driveway and in so doing Mrs. Sullivan acted with utter disregard of the danger ahead. We therefore find Mrs. Sullivan guilty of contributory negligence which bars recovery by the plaintiff.
Furthermore, the plaintiff, by her sudden engagement of the passing gear rapidly and unnecessarily increased her forward motion which resulted in her traveling at an excessive rate of speed. The posted speed limit was 45 miles per hour, a speed at which the plaintiff was nearly traveling prior to her engagement of the passing gear. Considering these facts, the 114 feet of skid marks made by her vehicle prior to impact, and the reaction time necessary for Mrs. Sullivan to commence the "heavy braking" which she used in making the skid marks, convinces us, as it did the trial judge, that the speed of the Sullivan vehicle was excessive and negligent.
The plaintiff contends that the trial court erred in exempting John P. Navarre, a witness for defendant, from its order of sequestration. John P. Navarre, a defense *735 witness, was enrolled as defense counsel for Mrs. Welch. We acknowledge the Disciplinary Rules of the Louisiana Code of Professional Responsibility provide that a lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he will be called as a witness. Whether or not John P. Navarre violated these rules is not a question before this court, instead the question presented herein is did the trial court abuse its discretion in exempting Mr. Navarre from its order of sequestration.
Article 2283 of the Civil Code provides in pertinent part:
". . . being employed as a counsellor or attorney, does not disqualify him from being a witness in the cause in which he is employed."
Article 1631 of the Louisiana Code of Civil Procedure states:
"On its own motion the court may, and on request of a party the court shall, order that the witnesses, other than parties, be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interest of justice, the court may exempt any witness from its order. As amended Acts 1966, No. 36, sub. sec. 1."
The trial judge has great discretion in the manner in which proceedings are conducted before his court, and it is only upon a gross abuse of that discretion that appellate courts have intervened. State of Louisiana in the Interest of Brecheen, 264 So.2d 779 (La.App.1st Cir., 1972). We find no gross abuse of that discretion by the trial judge.
For the reasons herein set out, the judgment appealed from is affirmed. Costs in the trial court and in this court are to be borne one-half by plaintiffs-appellants and one-half by defendants-appellees.
AFFIRMED.